# In the United States Court of Federal Claims

| | |
|---|---|
| R&R CONNER AVIATION, L.L.C., d/b/a<br>R&R CONNER HELICOPTERS,<br><br>       Plaintiff,<br><br> v.<br><br>THE UNITED STATES,<br><br>       Defendant. | No. 24-cv-0039<br>(Filed: Dec. 9, 2024) |

Lawson E. Fite, Schwabe, Williamson & Wyatt, P.C., Portland, OR, for Plaintiff.

Patrick Angulo, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With him on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and L. Misha Preheim, Assistant Director.

## OPINION AND ORDER

Meriweather, Judge.

  Plaintiff, R&R Conner Helicopters ("R&R Conner"), seeks damages from the United States resulting from the termination of a contract between R&R Conner and the National Forest Foundation ("NFF"). R&R Conner alleges that it is both a subcontractor hired by the NFF to carry out a restoration project for the Forest Service of the United States Department of Agriculture and a third-party beneficiary to the prime contracts between the NFF and the Forest Service. The United States filed a Motion to Dismiss, ECF No. 5, contending that R&R Conner's suit should be dismissed for lack of subject-matter jurisdiction and failure to state a claim because R&R Conner lacks privity of contract with the United States and does not qualify as a third-party beneficiary. Having reviewed the parties' briefs[1] and the relevant law, for the reasons explained below, the Court **GRANTS** the United States' Motion to Dismiss.

---

[1] This opinion is based on the following filings: Compl., ECF No.1; Def.'s Mot. to Dismiss, ECF No. 5 ("Mot."); App'x to Def.'s Mot. to Dismiss ("App'x"), ECF No. 5-1; Pl.'s Opp. to Mot. to Dismiss, ECF No. 8 ("Opp."); Def.'s Reply in Opp. to Mot. to Dismiss, ECF No. 9 ("Reply"). Throughout, page citations to documents in the record refer to the document's original pagination, unless the page is designated with an asterisk (*e.g.*, *1), in which case the reference is to the pagination assigned by PACER/ECF.

## BACKGROUND[2]

The Healthy Forests Restoration Act of 2003 grants the United States Forest Service, under the purview of the Department of Agriculture, authority to "enter into stewardship contracting projects with private persons or other public or private entities to perform services to achieve land management goals for the national forests," such as removing vegetation to reduce fire hazards. 16 U.S.C. §§ 6512, 6591c(c)(5). Project service-providers are selected on a "best-value basis," by considering "past performance, work quality, experience, technical approach for performing the work, and benefits to the local community." Compl. ¶ 12 (quoting Forest Service Handbook 2409.19 Ch. 60 at 6, § 60.5). The Forest Service may enter into a stewardship agreement with an entity that can perform services or an entity that can contract out for services. *See* Forest Service Handbook 2409.19 Ch. 70 at 47, § 72.61.

On March 17, 2020, the Forest Service and NFF entered into a Master Stewardship Agreement ("MSA") to cooperatively further land management goals in the Kaibab National Forest through Supplemental Project Agreements ("SPA"). Compl. ¶ 33. On September 8, 2021, the Forest Service and NFF executed a Challenge Cost Share Agreement ("CCSA") under which NFF was required to "provide and fund a contractor to complete . . . project work" on over ninety-six acres of the Bill Williams Mountain in the Kaibab Forest. *Id.* ¶¶ 29–31. Per the CCSA, NFF was responsible for billing the Forest Service for a share of costs incurred from subcontracting. *Id.* ¶ 29; *see* App'x at 34–35.[3]

On March 3, 2022, the Forest Service and NFF executed the Bill Williams Steep Slope Hazardous Fuels Reduction Supplemental Project Agreement, governing project work over 812 acres of the Bill Williams Mountain. Compl. ¶¶ 33, 37 & 40. Like under the CCSA, NFF was directed to "procure and pay qualified contractor(s) to complete project work," and bill the Forest Service for a share of the costs. *Id.* ¶ 35; App'x at 2–3. But the Forest Service retained the right to "[s]erve as a consultant in contractor selection, contract negotiations, and contract award, including participating as a member of the bid review team." App'x at 4; *see* Compl. ¶ 39 ("R&R Conner was selected by NFF and the Forest Service.").

---

[2] As this case is at the Motion to Dismiss stage, this Opinion recites and assumes the truth of the factual allegations in the Complaint. *See General Mills Inc. v. Kraft Foods Global, Inc.*, 487 F.3d 1368, 1371 n.1 (Fed. Cir. 2007); *Cotter Corp. (N.S.L.) v. United States*, 165 Fed. Cl. 138, 145 (2023).

[3] The Court will consider the prime contracts provided by the Government in the appendix to its Motion because each is incorporated by reference in the Complaint and a court "must consider the complaint in its entirety, . . . in particular, documents incorporated into the complaint by reference" in ruling on a motion to dismiss. *Rocky Mtn. Helium, LLC v. United States*, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). The Court will not consider the Services Agreement because it is not explicitly cited in the Complaint. *See* Opp. at 6 (stating that only the SPA and CCSA should be considered part of the complaint under RCFC 10(c)).

NFF contracted with R&R Conner, a "small business engaged primarily in the [forestry] helicopter lifting industry," to complete project work under the CCSA and SPA—the prime contracts—"with concurrence from the Forest Service." Compl. ¶¶ 4, 32, 39 & 40. R&R Conner began the project work in September 2022, completed seventy-six acres, and began work on another 103 acres before winter. *Id*. ¶ 40. NFF reported that R&R Conner "has exceeded our expectations during operations and has more than met our contract specifications thus far," because R&R Conner "exceeded the specification for fuel loading, achieving an average of [six] tons/acre, well below the required average and at the bottom end of the range specified." *Id.*

After that season of work, the Forest Service allegedly "rewrote" the subcontract, reducing the acreage from 284 to 179 and adding a new requirement to use nets on twenty-eight acres. Compl. ¶ 41. At that time, "the Forest Service required NFF to obtain 'approval in writing from FS' before accepting work on any project[s]." *Id.* By the time R&R Conner resumed work as scheduled in August 2023, the Forest Service changed the project requirements again to require broader use of nets and "significantly reduced the standard for removal of . . . material to an average of less than [three] tons/acre with a range of [zero]–[five] tons/acre." *Id.* ¶ 42.

R&R Conner "responded in good faith to the Forest Service's demands and prepared a new pricing schedule reflecting the significant additional work," which included subcontracting a larger portion of the work. Compl. ¶ 43. During a video conference with R&R Conner and NFF, the Forest Service "rejected the need for any changes or additional expense to meet the new much lower specifications," and then directed NFF to terminate the subcontract with R&R Conner. *Id.*

R&R Conner claims that the Forest Service breached provisions of the prime contract and its duty of good faith and fair dealing by modifying the terms of the CCSA and SPA and instructing NFF to terminate the subcontract with R&R Conner. Compl. ¶¶ 51–62. R&R Conner seeks damages of $4,939,560.00 because "the eleventh-hour termination . . . could not be mitigated by replacement work from other sources" for that season. *Id.* ¶ 44.

## LEGAL STANDARD

### A. Subject Matter Jurisdiction

When jurisdiction is challenged under Rule 12(b)(1), "[p]laintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Park Props. Assocs., L.P. v. United States*, 916 F.3d 998, 1002 (Fed. Cir. 2019). The "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Acevedo v. United States*, 824 F.3d 1365, 1369 (Fed. Cir. 2016). If the movant disputes allegations of fact, the Court may look beyond the pleadings to inquire into jurisdictional facts, and if any are in dispute, order jurisdictional discovery. *See Fox Logistics & Constr. Co. v. United States*, 145 Fed. Cl. 236, 239 (2019) (citing *Lechliter v. United States*, 70 Fed. Cl. 536, 543 (2006)); *Hopi Tribe v. United States*, 113 Fed. Cl. 43, 50 (2013)).

B. **Failure to State a Claim**

On a Rule 12(b)(6) motion to dismiss, the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]he [C]ourt must accept all well-pled factual allegations as true and draw all reasonable inferences in the plaintiff[']s favor." *Ainslie v. United States*, 355 F.3d 1371, 1373 (Fed. Cir. 2004). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "must consider the complaint in its entirety, . . . in particular, documents incorporated into the complaint by reference." *Rocky Mtn. Helium, LLC,* 841 F.3d at 1325.

**DISCUSSION**

Under the Tucker Act, this Court has jurisdiction over claims based on "any express or implied contract with the United States."[4] 28 U.S.C. § 1491(a)(1). This Court has consistently held that "[t]o have standing to sue the sovereign on a contract claim, a plaintiff must be in privity of contract with the United States." *Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003); *Park Props. Assocs.*, 916 F.3d at 1002 (holding that a plaintiff has standing to sue on a contract claim "*only if* there is privity of contract between a plaintiff[] and the [United States]") (emphasis added); *Katz v. Cisneros*, 16 F.3d 1204, 1210 (Fed. Cir. 1994) ("Absent privity between [plaintiffs] and the government, there is no case."); 28 U.S.C. § 1491(a)(1). Privity of contract is "a fundamental requirement of contract law." *S. Cal. Fed. Sav. & Loan Ass'n v. United States*, 422 F.3d 1319, 1328 (Fed. Cir. 2005). It also is necessary to establish a waiver of sovereign immunity, without which no claim against the United States may proceed, because "[t]he government consents to be sued only by those with whom it has privity of contract." *Erickson Air Crane Co. Wash. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984); *see also Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998) (noting that "[t]he effect of finding privity of contract between a party and the United States is to find a waiver of sovereign immunity").

Generally, for a plaintiff to be in privity with the United States "the contract must be between the plaintiff and the government." *Ransom v. United States*, 900 F.2d 242, 244 (Fed. Cir. 2003); *see Fid. & Guar. Ins. Underwriters, Inc. v. United States*, 805 F.3d 1082, 1087 (Fed. Cir. 2015). However, a subcontractor "may be able to sue the federal government [for damages]

---

[4] "[A]uthority is divided on the appropriate motion, RCFC 12(b)(1) and RCFC 12(b)(6), pursuant to which the court may dismiss contract claims for lack of privity." *Riviera Drilling & Expl. Co. v. United States*, 61 Fed. Cl. 395, 400 (2004); *compare Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1341–42 (Fed. Cir. 2021) (concluding proper disposition is under 12(b)(6)), *with Milton v. United States,* 806 F. App'x 996 (Fed. Cir. 2020) (affirming 12(b)(1) dismissal). Nonetheless, the Federal Circuit has recognized that where "the jurisdictional issue and the merits are inextricably intertwined, and the former cannot be resolved without considering and deciding (at least in part) the latter," the Court may "bypass[ ] the jurisdictional question and decide[ ] the merits." *Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1353 (Fed. Cir. 2000). The Court will apply Rule 12(b)(6) to this motion.

4

if it can demonstrate that it is an intended third[-]party beneficiary of a contract with the United States." *Lea v. United States*, 126 Fed. Cl. 203 (2016) (citing *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1056 (Fed. Cir. 2012)). "The ability to sue under third-party beneficiary status is an 'exceptional privilege,' that 'should not be granted liberally.'" *Constructora Guzman, S.A. v. United States*, 161 Fed. Cl. 686, 692 (2022) (quoting *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1259 (Fed. Cir. 2005)).

It is undisputed that R&R Conner is not a party to the prime contracts upon which it bases its claims. *See, e.g.*, Compl. ¶ 1; Mot. at 1. The parties' dispute centers on whether R&R Conner can base its claims on its alleged status as an intended third-party beneficiary to the contract between NFF and the Forest Service. The United States argues that R&R Conner's Complaint should be dismissed for lack of subject-matter jurisdiction because R&R Conner is not in privity of contract with the United States, or alternatively for failure to state a claim because R&R Conner has not alleged facts sufficient to establish a claim as a third-party beneficiary. 28 U.S.C. § 1491(a)(1). R&R Conner counters that the contract and the facts alleged in the Complaint establish that it is an intended third-party beneficiary, and therefore its claims should proceed to discovery. *See* Opp. at 8–13.

"[T]he requirements to demonstrate third-party beneficiary status are 'stringent.'" *Pac. Gas & Elec. Co. v. United States*, 838 F.3d 1341, 1361 (Fed. Cir. 2016) (quoting *Anderson*, 344 F.3d at 1352). "In order to prove third[-]party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly." *Glass v. United States*, 258 F.3d 1349, 1354 (Fed. Cir. 2001). That is, "the contracting officer must be put on notice, by either the contract language or the attendant circumstances, of the relationship between the prime contractor and the third-party subcontractor so that an intent to benefit the third party is fairly attributable to the contracting officer." *Flexfab*, 424 F.3d at 1263. "The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefited thereby." *Mont. v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997). For example, when "B promises A to pay whatever debts A may incur" and B pays off the debts to "C, D and E, they are intended beneficiaries ... [but] if the money is to be paid to A in order that he may be provided with money to pay C, D and E, they are at most incidental beneficiaries." *G4S Tech. LLC v. United States*, 114 Fed. Cl. 662, 671 (2014), *aff'd*, 779 F.3d 1337 (Fed. Cir. 2015) (citing Restatement (Second) of Contracts § 302 (1981)). "Circumstantial evidence of governmental intent to bind itself to a third party must be considered in the context of the government's responsibilities to safeguard taxpayer funds and advance the public interest," *G4S Tech. LLC v. United States*, 779 F.3d 1337, 1340 (Fed. Cir. 2015), and under the "fundamental legal tenant that the United States as sovereign is immune from suit . . . [and] any such waiver of sovereign immunity must be narrowly construed." *Lockheed Martin Corp. v. United States*, 50 Fed. Cl. 550, 562 (2001), *aff'd*, 48 F. App'x 752 (Fed. Cir. 2002) (quoting *Nat'l Leased Hous. Assoc. v. United States*, 32 Fed. Cl. 454 (1994)).

The prime contracts contain no express declaration of intent to benefit R&R Conner or other subcontractors; instead, they merely anticipate that NFF will engage subcontractors to complete the project work. Compl. ¶¶ 46 ¶ 48. It is true that R&R Conner (and any other subcontractor) would financially benefit from that relationship. But the Federal Circuit has long

5

held that subcontractors "are not third[-]party beneficiaries merely because the contract would benefit them." *F.D.I.C. v. United States*, 342 F.3d 1313, 1319 (Fed. Cir. 2003). The "general rule [is] that a subcontractor that agrees to supply materials or labor to a general contractor is only an incidental beneficiary." *G4S Tech. LLC*, 114 Fed. Cl. at 669, *aff'd*, 779 F.3d 1337 (Fed. Cir. 2015). Moreover, "the court will not . . . infer that the government intended to directly benefit the subcontractor merely because an authorized government official (1) oversees the activities of the prime contractor; (2) becomes aware that the prime contractor has failed to timely pay its subcontractors, and/or (3) makes funds available to the prime contractor in order for the prime contractor to pay its subcontractors." *Fox Logistics & Constr. Co.*, 171 Fed. Cl. at 520–21 (citing *G4S Tech. LLC*, 114 Fed. Cl. at 672–73, *aff'd*, 779 F.3d 1337 (Fed. Cir. 2015)). Thus, the contract's contemplation that NFF would employ subcontractors like R&R Conner is insufficient to establish that R&R Conner "fall[s] within a class clearly intended to be benefited" by the contract. Opp. at 9–11 (quoting *Mont.*, 124 F.3d at 1273).

      R&R Conner argues that it is a third-party beneficiary because the Forest Service was "intimately involved with the [sub]contractor(s)." Opp. at 4. First, the Forest Service retained the right to consult on subcontractor selection, *see* App'x at 19–20, and "R&R Conner was selected . . . by the NFF with concurrence from the Forest Service." Compl. ¶ 32. Second, the prime contracts specified that "[a]ll activities will be agreed upon with the Sub-Awardee(s) and the NFF, in coordination/ concurrence with the Forest Service." Opp. at 4 (quoting App'x at 4, 19–20, 22). R&R Conner points out that the Forest Service required NFF to obtain written approval before accepting R&R Conner's work, changed the project specifications, and communicated directly with R&R Conner about proposed pricing changes. *See* Compl. ¶¶ 41–43. While the Forest Service certainly had a relationship with R&R Conner, a government agency's oversight of a project and subsequent communications with subcontractors does not confer third-party beneficiary status upon a subcontractor. *See Threshold Tech., Inc. v. United States*, 117 Fed. Cl. 681, 706 (2014). Moreover, these interactions took place long after the prime contracts were executed and, thus, cannot be evidence of an intent to benefit R&R Conner through the prime contracts. In fact, NFF and the Forest Service could have chosen another subcontractor, and R&R Conner would not have worked with the Forest Service and benefitted from the prime contracts at all.

      R&R Conner alternatively posits that it is a third-party beneficiary because "payments under the contract were limited to reimbursing NFF's outlays, so the contracting officer knew or at least should have known of the direct benefit to R&R Conner." Opp. at 10 (citing *J.G.B. Enter., Inc. v. United States*, 497 F.3d 1259, 1261 n.1 (Fed. Cir. 2007)). The fact that a government agency pays into a contractor's general fund with knowledge that subcontractors will be paid portions of that fund is insufficient to establish that those subcontractors are third-party beneficiaries of the contract. *See G4S Tech.*, 779 F.3d at 1342. Typically, "cases in which a subcontractor was found to have third-party beneficiary status involve a payment mechanism by which the subcontractor has *direct access* to payments made by the government." *Constructora Guzman*, 161 Fed. Cl. at 694 (collecting cases) (emphasis added). Here, the prime contracts and the subcontract are clear that R&R Conner, like any other subcontractor that could have been engaged, was paid by NFF and NFF was then reimbursed in part by the United States. *See* Compl. ¶¶ 30, 35 ¶ 48; App'x at 3, 35, 58. In other cases, this Court has determined that subcontractors have third-party beneficiary status where "an authorized government official

6

approved a contract provision for the express purpose of effectuating payment from the government to the subcontractor[]." *G4S Tech. LLC*, 114 Fed. Cl. at 672–73, *aff'd*, 779 F.3d 1337 (Fed. Cir. 2015). The facts alleged by R&R Conner do not indicate that any portion of the prime contracts was constructed for R&R Conner's benefit. Accordingly, R&R Conner is not a third-party beneficiary merely because it receives and benefits from government funds that flow through the prime contracts.

R&R Conner's attempt to analogize its situation to cases in which the prime contractor "has acted [] merely as a conduit for funds and/or contractual obligations[,]" Opp. at 11, misses the mark. In the analogized cases, the government conferred benefits to specific third-party groups, not subcontractors. In *Carter v. United States*, the contracts were expressly drafted to distribute nonfat dry milk to "livestock producers suffering from drought conditions," and set guidelines about the producers and third parties who could receive the milk. 102 Fed. Cl. 61, 70 (2011). Thus, it was clear that the livestock producers were the intended beneficiaries of the contracts, and the states who were prime contractors were "mere conduits to funnel the [nonfat dry milk] to the producers." *Id.* The *Carter* plaintiff's status as a livestock producer gave it third-party beneficiary status. *See id.* Similarly, in *H.F. Allen Orchards v. United States*, this Court concluded that farmers who used the irrigation water that was provided through a water project overseen by the United States Bureau of Reclamation were the intended third-party beneficiaries of the contracts between that Bureau and the irrigation districts that distributed the water. 749 F.2d 1571, 1576 (Fed. Cir. 1984). Both cases are inapposite because the plaintiffs therein are recipients of government-subsidized goods and services simply distributed by a prime contractor, not subcontractors carrying out services on behalf of the prime contractor. Here, in contrast, "there is no identifiable benefit flowing" from the Forest Service to R&R Conner. *Pac. Gas & Elec. Co.*, 838 F.3d at 1362.

If R&R Conner's position were correct, "almost any subcontractor over which the government exerts meaningful oversight and whose work is funded indirectly by the government would be a third-party beneficiary of the government's contract with the prime contractor. That cannot be so." *G4S Tech.*, 779 F.3d at 1344. The Complaint and contract simply do not provide a factual basis to conclude that R&R Conner is a third-party beneficiary of the contract between NFF and the Forest Service. Accordingly, R&R Conner's breach of contract claim cannot go forward and must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court finds that R&R Conner was neither in privity of contract with the Forest Service nor an intended third-party beneficiary of NFF's contract with the Forest Service and, therefore, fails to state a viable breach of contract claim. The

Court hereby **GRANTS** the United States' motion to dismiss under RCFC 12(b)(6). The Clerk shall enter **JUDGMENT** accordingly.

    **IT IS SO ORDERED.**

*/s/Robin M. Meriweather*
ROBIN M. MERIWEATHER
Judge
